IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
STATE FARM LIFE INSURANCE CO.,    *
                                  *
    Plaintiff,                    *
                                  *
        v.                        *      CV 116-085
                                  *
LATASHA JEFFERSON; DAVID TURNER;  *
VALERIE SMITH; and BEVERLY        *
WILCHER WHITAKER,                 *
                                  *
    Defendants.                   *
```

**O R D E R**

Before the Court is Defendant Latasha Jefferson's motion for summary judgment. (Doc. 67.) The Clerk of Court gave the remaining defendants timely notice of Defendant Jefferson's summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 69.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Defendants Valerie Smith, David Turner, and Beverly Wilcher Whitaker filed a response in opposition and Defendant Jefferson filed a reply in support. (Docs. 75, 78.) The time for filing materials in opposition has expired, and the motion is ripe for consideration. Upon consideration of the evidence of record,

relevant law, and the parties' respective briefs, Defendant Jefferson's motion for summary judgment is **DENIED**.

## I. BACKGROUND

On November 2, 1999, State Farm Life Insurance Co. ("State Farm") issued a life insurance policy to Mr. Michael Turner ("Decedent") in the amount of $100,000.00 (the "Policy"). (Bussey Dep., Doc. 43, at 86-100.) On the insurance application, Decedent designated his then-wife, Virginia Taylor, as the primary beneficiary, his mother, Julia Hankerson, as the successor beneficiary, and his older sister, Defendant Whitaker (née Beverly Turner), as the final beneficiary of the Policy. (Id. at 104-05.)

Approximately five years later, on a change of beneficiary form dated December 1, 2004, Decedent designated Kathy Harris and Joyce Johnson as the primary beneficiaries and his brother, Defendant Turner, as the successor beneficiary of the Policy. (Id. at 103.) Approximately ten years later, on a change of beneficiary form dated April 7, 2015, Decedent designated his brother and older sister, Defendants Turner and Whitaker, as primary beneficiaries and his younger sister, Defendant Smith (née Valerie Johnson), as successor beneficiary of the Policy. (Id. at 102, 108; see also Doc. 1-3.)

At some point in 2014, Decedent suffered a debilitating stroke. (Turner Dep., Doc. 44, at 17; see also Smith Dep., Doc. 47, at 13 (first stroke occurred approximately one and a half years prior to Decedent's death).) Decedent suffered a series of subsequent strokes over the following year, for which he received treatment at various hospitals in Augusta, Georgia. (Turner Aff., Doc. 73, ¶ 4; Whitaker Aff., Doc. 72, ¶ 4; Turner Dep. at 18 (Decedent suffered approximately 19 strokes in total); Whitaker Dep., Doc. 45, at 8-12.) Decedent was eventually placed in an inpatient nursing facility, where he was given morphine for his increasing pain. (Turner Aff. ¶ 5; Whitaker Aff. ¶ 5.) In early 2016, Decedent's daughter, Defendant Jefferson, took action to have him removed from the inpatient nursing facility and returned to his residence. (Jefferson Dep., Doc. 46, at 14.) Decedent was placed in hospice care soon thereafter, where he continued to receive morphine and other pain-management medication. (Id. at 29-30; Whitaker Dep. at 34.)

On February 29, 2016, Decedent purportedly granted Defendant Jefferson a general power of attorney. (Bussey Dep. at 110-15; Jefferson Dep. at 14-18.) By way of a change of beneficiary form dated March 1, 2016, Defendant Jefferson attempted to substitute herself as the primary beneficiary of the Policy under her authority as Decedent's attorney-in-fact.

3

(Bussey Dep. at 117; Jefferson Dep. at 16-18.) By letter dated March 18, 2016, State Farm notified Decedent that it would not process the change of beneficiary request dated March 1, 2016, "due to lack of authority according to the [p]ower of [a]ttorney document and the appearance of self-dealing." (Bussey Dep. at 119.) State Farm further notified Decedent that, if he was "capable of signing the request himself, [State Farm] would be able to make the requested change." (Id.)

On March 23, 2016, a State Farm insurance agent, Mr. Eddie Bussey, went to Decedent's residence to fulfill a change of beneficiary request with respect to the Policy. (Bussey Dep. at 18-19.) Defendant Jefferson was present for this appointment. (Id. at 19-20.) Mr. Bussey asked Decedent twice whether he understood what was happening with relation to the change of beneficiary request, to which Decedent allegedly responded in the affirmative. (Id. at 22.) Mr. Bussey then stated that he had a form for Decedent to sign, which Decedent allegedly hesitated to sign and then shook his head to respond in the negative. (Id. at 22-23.) Mr. Bussey again repeated that he needed Decedent's signature and stated that Decedent could sign with an "X" if he wanted and handed him a pen. (Id.) Decedent then purportedly executed the (now-disputed) change of beneficiary form designating Defendant Jefferson as the Policy's primary beneficiary by scrawling an "X" on the signature line

4

thereon. (Id. at 23-24, 101.) Mr. Bussey left shortly thereafter. (Id. at 24.) State Farm confirmed the change of beneficiary by notice dated April 5, 2016. (Doc. 1-7.)

Decedent passed away on April 11, 2016. (Wilcher Aff., Doc. 41-1, ¶ 5; Doc. 1-8.) That same day, Defendant Jefferson assigned $9,510.00 of the Policy's proceeds to the relevant funeral home and, on April 14, 2016, she submitted a claim to State Farm for the remaining proceeds of the Policy. (Docs. 1-9, 1-10.) By letter to State Farm postmarked April 15, 2016, Defendants Smith, Turner, and Whitaker requested "that any insurance monies not be disbursed due to alleged fraudulent behavior on the part of [Defendant] Jefferson" and asserted that Decedent did not have the capacity to "conduct any business" due to medical complications from his prior strokes. (Bussey Dep. at 121-22.)

After several months of attempting to informally resolve the adverse claims to the Policy, State Farm filed this interpleader under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. (Doc. 1.) On June 27, 2016, the Court approved State Farm's request to proceed with the interpleader and deposit the disputed funds into the Registry of the Court. (Doc. 6; see also Doc. 7 (clerk's certification of deposit in Court's Registry of $91,813.55).) On September 2, 2016, the Court dismissed State Farm. (Doc. 29.) On August 11, 2017,

5

Defendant Jefferson filed her present motion for summary judgment. (Doc. 67.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the

movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). "The non-moving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" Bryant v. Dougherty Cty. Sch. Sys., 382 F. App'x 914, 917 (11th Cir.

7

2010) (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008); and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

### III. DISCUSSION

To constitute a valid contract under Georgia law, the parties thereto must have the capacity to be able to contract. O.C.G.A. § 13-3-1; Nelson v. State Farm Life Ins. Co., 344 S.E.2d 492, 494 (Ga. Ct. App. 1986). "[W]herever possible," however, Georgia courts seek "to uphold contracts and to uphold the capacity of one to enter into a contract." Gulf Life Ins. Co. v. Wilson, 181 S.E.2d 914, 916 (Ga. Ct. App. 1971). Accordingly, Georgia "courts start with the general rule that every man is presumed to have all his mental faculties and to be of normal and ordinary intelligence, and where it is contended that one who executed a contract was not competent to execute it, the burden is upon him who asserts the incompetency." Nelson, 344 S.E.2d at 494 (internal quotations and citations omitted); see also Wilson, 181 S.E.2d at 916 ("Mental or physical impairment is never presumed. It must be proved."). Therefore, "[i]n order to void a contract on the ground of mental incapacity of the maker, he must have been *non compos mentis*, that is, entirely without understanding, at the time the contract was executed." Jones v. Smith, 56 S.E.2d 462, 466 (Ga.

8

1949) (citing Thomas v. Lockwood, 31 S.E.2d 791, 796 (Ga. 1944)); see also Nelson, 344 S.E.2d at 494 ("[E]ven proof of a temporary loss of sanity or competency would create no presumption that it continued up to the time of execution of the contract . . . ." (citing Cmty. Loan & Inv. Corp. v. Bowden, 12 S.E.2d 421, 423 (Ga. Ct. App. 1940)). "[B]ut, in determining such an issue, it is permissible to receive and consider evidence as to the state of the [maker]'s mind for a reasonable period both before and after the transaction under investigation."[1] Pantone v. Pantone, 57 S.E.2d 77, 81 (Ga. 1950) (citations omitted); see also Williams v. Williams, 155 S.E.2d 383, 384 (Ga. 1967) ("[E]vidence as to the state of the grantor's mind for a reasonable period both before and after the transaction may be considered, and might be such as would authorize a finding against contractual capacity at the time the deed was executed, despite evidence of witnesses who were present at the time and testified that the grantor did have such capacity.").

---

[1] See also Pantone, 57 S.E.2d at 82 ("Under our procedure it is the province of the jury to pass upon issues of fact and to determine where the preponderance of evidence lies; and where, as here, there is proof from which the jury would be authorized to find that both before and after the time of the execution of the contract in question, the maker was without contractual capacity, such evidence as to such a previous state of mind or subsequent state of mind raises an issue to be passed upon by the jury and may be sufficient to authorize the jury to find against contractual capacity at the time the contract was executed, despite evidence of witnesses who were present at the time of execution and testified that the maker did have such capacity. It is the province of the jury to determine which of conflicting theories presented by the evidence they will accept, and not for this court to pass upon the weight and credit to be given to the testimony." (internal citations omitted)).

Here, the Defendants opposing summary judgment have provided sufficient evidence of being in direct contact with Decedent shortly before and/or after the time he purportedly executed the disputed change of beneficiary form on March 23, 2016. (See, e.g., Turner Aff. ¶¶ 3, 14; Whitaker Aff. ¶ 7; Turner Dep. at 12-13, 34; Whitaker Dep. at 12-13; Smith Dep. at 6-7, 11.) These Defendants have similarly provided sufficient evidence from which a reasonable factfinder could conclude that Decedent's mental health had rapidly declined as a result of the numerous strokes he suffered and that, at the time he allegedly executed the disputed change of beneficiary form, Decedent was entirely without understanding as to the outside world and the import of the transaction at hand. (See, e.g., Turner Aff. ¶¶ 4-6, 9-11, 14; Whitaker Aff. ¶¶ 4-6, 8-11, 14; Turner Dep. at 21-34, 42-43; Whitaker Dep. at 13-17, 23-24, 33-34; Smith Dep. at 7-8, 11-15; see also Bussey Dep. at 14, 19-23, 60-64; Jefferson Dep. at 27-32.) That Defendant Jefferson and others – including the State Farm agent who was present during the execution of the disputed change of beneficiary form – believed that Decedent appeared to know and understand what he was doing when he scratched an "X" on the change of beneficiary form does not eliminate the need for a jury to determine whether Decedent in fact had the capacity to effectuate such a change. See, e.g., Pantone, 57 S.E.2d at 82 (despite opposing testimony of

10

witnesses who were present at the time of execution, jury issue existed as to decedent's capacity to contract based on testimony that he lacked such capacity before and after the time of execution); Wilson, 181 S.E.2d at 916 (jury issue existed despite insurance agent's testimony that maker "was freely conversing with people in an intelligent manner" and "appeared to know and understand what he was doing in surrendering the [insurance] policy" at the time of executing request). Therefore, because a genuine dispute of material facts exists as to Decedent's capacity to contract at the time of the purported execution of the disputed change of beneficiary form, summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (citations omitted)).

## IV. CONCLUSION

Based upon the foregoing and due consideration, the Court concludes that Defendant Jefferson is not entitled to summary judgment. Accordingly, **IT IS HEREBY ORDERED** that Defendant Jefferson's motion for summary judgment (doc. 67) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 9th day of January, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA